## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **DRMARTS, LLC,** | |
| Plaintiff, | |
| v. | **Civil Action No. 2:16-cv-1204** |
| **HELIANA ORDOÑEZ (A/K/A HELIANA FORTES),** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff, DRMArts, LLC ("DRMArts" or "Plaintiff"), by and through counsel, brings this Complaint, Jury Demand and Application for Injunctive Relief against Defendant, Heliana Ordoñez, also known as and doing business as Heliana Fortes (hereinafter referred to as "Defendant"), respectfully alleging and showing unto the Court as follows:

### NATURE OF THE ACTION

1.      This is an action alleging copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq.,* seeking to enjoin and prevent Defendant's ongoing willful infringement and profiting from the unauthorized exploitation of numerous artistic works, the exclusive rights to which Defendant has licensed to Plaintiff, and to recover related damages, attorneys' fees and costs.  Plaintiff DRMArts also seeks injunctive relief and damages for Defendant's willful trademark infringement and dilution of Plaintiff's registered mark, HELIANA LUSSIET, in violation of the Lanham Act, 15 U.S.C. § 1125, as well as related attorneys' fees and costs.  In addition to these federal statutory claims, Plaintiff asserts claims under the law of the State of Texas, including business defamation, breach of contract and, in the alternative, unjust enrichment and *quantum meruit.*

2.    Because no adequate remedy at law exists and present performance under the contract is possible, DRMArts' primary objective and remedy sought herein is an injunction ordering specific performance of the contract as a substitute for money damages resulting from Defendant's breach of the contract at issue.

## PARTIES

3.    Plaintiff, DRMArts LLC, is a limited liability company organized and existing under the laws of the State of Texas that maintains its principal place of business at 203 Malabar St, Lakeway, TX 78734.

4.    Upon information and belief, Defendant, Heliana Ordoñez, is a citizen of Venezuela who is beyond the age of majority possessing the full capacity to be sued and currently residing at Passage de Batllo 14, 1-3, 08036 Barcelona, Spain.  Upon information and belief, Defendant has recently married and adopted the surname of her husband and may now be known and going by, and doing business under, the name Heliana Fortes.

5.    As a foreign national residing outside of the continental United States, Defendant may be served with process in this matter pursuant to the provisions of the Hague Service Convention.  More particularly, as a resident of Spain, Defendant may be served with process under Article 10 of the Hague Service Convention.

## JURISDICTION AND VENUE

6.    This action arises under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 101 *et seq.* and, therefore, given the presence of questions of federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.    Venue is proper in this district under 28 U.S.C. §§ 1391(c), as Defendant is not resident within the United States but has expressly consented to the jurisdiction of this Court

through execution of a binding contract with Plaintiff that dictates that any dispute arising therefrom is to be resolved exclusively in the state or federal courts located in Marshall, Texas.

8.      Defendant has waived any objection to this Court's exercise of specific and general personal jurisdiction.

9.       In addition to federal question jurisdiction, jurisdiction with this Court is also proper under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between a citizen of the State of Texas and a citizen of a foreign state.

## CONDITIONS PRECEDENT

10.     All conditions precedent to the claims asserted and remedies sought herein have been performed, waived, or have otherwise occurred.

## FACTS COMMON TO ALL CLAIMS

11.     On October 1, 2015, Defendant executed and entered into contract entitled Master License Agreement with DRMArts (the "Agreement") that provided for substantial ongoing minimum monthly license fee to be paid to Defendant, as well as reimbursement for art studio rental fees and reimbursement for art supplies, as well as 50% share in the profit from all future license fees generated by Plaintiff, DRMArts.

12.     In exchange for the prescribed consideration and benefits, Defendant granted to DRMArts, for the term of the contract, an exclusive license to certain enumerated, already existing fine artworks and accessory designs created by Defendant; an exclusive license to all future fine artworks and accessory designs created by Defendant; an exclusive license to certain, enumerated brands, logos, trademarks and URLs; and ownership of certain other enumerated brands, logos, trademarks and URLs.

13.     The Master License Agreement contemplated a long-term relationship between Defendant and DRMArts whereby Defendant would create a certain minimum quantity of fine

artworks and accessory designs each month to which DRMArts would hold the exclusive rights to reproduce the original works in copies; prepare derivative works; distribute copies and derivative works to the public by sale or other transfer of ownership; import or export copies and derivative works; display the copyright work, derivative works and/or copies publicly; and any other commercial purpose, including the right to sublicense any or all of the same rights to a third party at DRMArts' sole discretion.

14.     Pursuant to the Agreement, Defendant was obligated to ship the original fine artworks from her studio in Spain to DRMArts in Texas, the cost of which was always borne by DRMArts. In addition, accessory designs files were created digitally by Defendant and transmitted electronically to DRMArts for use in effecting filing of copyright registrations and for incorporation by DRMArts into products following the artistic direction of Defendant.

15.     As alleged above, in addition to minimum licensing fee payments remitted to Defendant on a monthly basis, Defendant also received 50% of any profit made by DRMArts as a result of any of the licensed activities. DRMArts reasonably expected payments to Defendant to exceed $10,000,000 over her lifetime.

16.     The Master License Agreement also required Defendant to refrain from any publication or public display of any fine artworks or accessory designs covered by the Agreement in any physical or electronic venue without prior written approval of DRMArts, as not to undermine Plaintiff's efforts to exploit the work to the parties' mutual benefit.

17.     Subsequent to executing the agreement, Defendant executed numerous additional documents acknowledging conveyance to DRMArts of an exclusive license to then-existing works, thereby aiding DRMArts in filing copyright registrations of such works with the US Copyright Office.

18.     In the months immediately following execution of the Agreement, Defendant completed and provided the minimum quantities of accessory designs and fine artworks to DRMArts as specified in the Agreement and executed related documents acknowledging conveyance to DRMArts of an exclusive license to such works, thereby enabling DRMArts to file copyright registrations of such works with the US Copyright Office.

19.     Since the inception of the Agreement, Plaintiff fully performed all of its duties under the Agreement, conveying a substantial sum directly to Defendant in the form of minimum license fees and reimbursement for artist studio rental, art supplies fees, shipping, transportation, meals, computer peripherals, camera equipment and other expenses.

20.     To facilitate its performance under the Agreement, DRMArts engaged personnel to manage and catalog the exclusively licensed fine artworks and digitize and refine the exclusively licensed accessory designs. DRMArts engaged vendors to produce prints and reproductions of the fine artworks, assessed and engaged vendors to manufacture goods incorporating the exclusively licensed accessory designs, and commissioned a website created to market and sell originals and reproductions of the fine artworks and products created bearing the accessory designs.  All of the expenses of the foregoing were borne by DRMArts.

21.     From the execution of the Agreement to the present, a total of 157 works (fine art works and accessory designs) were digitized, cataloged and registered with the U.S. Copyright Office under Copyright Registration Numbers VAu 1-255-969, VAu 1-250-363, VAu 1-245-786, VAu 1-244-657, VAu 1-234-575, VAu 1-234-576, VAu 1-234-577, and VA 1-990-485. Attached as Exhibit A are fair and accurate copies of the Certificates of Registration issued by the U.S. Copyright Office.

22.     With regard to trademark, DRMArts engaged legal counsel to file a wordmark registration for HELIANA LUSSIET, a brand name jointly created by DRMArts and Defendant, and assigned to DRMArts pursuant to the Master License Agreement. The application for the word mark HELIANA LUSSIET is pending, having been published for opposition in The Official Gazette on August 16, 2016, with no known opposition or request for extension having been filed to date.

23.     On occasion, after discussion with Defendant, DRMArts made allowances, in advance, to accept fewer works than the Master License Agreement's minimum quantities for a given month based upon the size or complexity of work being created by Defendant. However, at no time was the minimum quantity requirement reduced or waived by DRMArts, nor were concessions or modifications to the required output for a given period made retroactively.

24.     DRMArts' obligation to make monthly minimum licensing fee payments, to pay for Defendant's art studio, and to reimburse related expenses was made specifically contingent on Defendant meeting and continuing to meet the minimum quantity obligations. Defendant understood that she would receive these payments so long as she continued to produce new fine artworks and accessory designs commensurate with the minimum quantities specified in the agreement each and every month. To be sure, the minimum quantities were originally proposed by Defendant.   Defendant understood that if she failed to meet her minimum quantity obligations, DRMArts had the right to suspend all such payments.

25.     Nevertheless, in April of 2016, Defendant neglected to meet her contractual obligations with respect to the minimum quantity requirement, failing entirely to deliver any fine artworks or accessory designs whatsoever. To this date, no fine artworks or accessory designs have been delivered to Plaintiff for the April 2016 period.

26.     To be sure, Defendant has failed to deliver the required works called for under the Agreement for the period of April 2016 and has thus been in breach since the April 2016 works were due.

27.     Consequently, on May 5, 2016, DRMArts issued correspondence to Defendant noting her failure to meet a significant and important obligation of the Agreement.

28.     Further, the May 5, 2016 correspondence notified Defendant that, pursuant to the Master License Agreement, and as a result of her failure to meet the monthly minimum quantity requirements, the minimum licensing fee payments would be suspended beginning with the June 2016 period if the failure to perform were not cured.  The letter further notified Defendant that DRMArts would continue reimbursing Defendant's art studio fee and art supplies expenses for the time being, at its sole discretion.

29.     Payment of the monthly minimum licensing fee for the May 2016 period was remitted, however, despite Defendant's failure to perform, as a good faith gesture in the hopes that the parties could resolve any issues preventing the creation and provision of fine artworks and accessory designs.

30.     Nevertheless, Defendant refused thereafter to comply with the Master License Agreement, despite continuing to create fine artworks and accessory designs that she did not deliver to Plaintiff, evidenced by Defendant's activity on social media, for the June 2016 period.

31.     As a result, DRMArts informed Defendant via correspondence dated July 3, 2016 that it would be suspending all art studio fee and expense reimbursement payments going forward, but once again invited Defendant to discuss with DRMArts a way to reconcile these past failings and move forward with their business relationship.

32.     The July 3, 2016 correspondence emphasized to Defendant that, while all discretionary payments were being suspended pursuant to the express terms of the Master License Agreement, all other aspects of the agreement remained in place.

33.     Upon information and belief, Defendant has continued to create both fine artworks and accessory designs, but has wholly failed to promptly notify DRMArts of completion of each work or deliver the works to DRMArts as required by the Master License Agreement.

34.     Upon information and belief, since April 2016 and as reflected on social media, Defendant has begun displaying, selling and otherwise exploiting the newly created fine artworks and accessory designs directly to a worldwide market, in clear violation of DRMArts' contractual and intellectual property rights.

35.     For example, on or about July 13, 2016, Defendant posted an image to her Instagram account (*https://www.instagram.com/helianafortes/*) consisting of a black & white rendering of an accessory design exclusively licensed to DRMArts entitled "Skull." (See, Exhibit B)

36.     As another example, on or about August 9, 2016, Defendant posted an image to her Instagram account consisting of an accessory design for footwear provisionally catalogued by DRMArts as HL August 2016-2 and offered them for sale, stating, "YAS! Let's Slay together! Muy pronto tendrán la oportunidad de ordenar sus Ballerinas personalizadas y solo las 10 primeras compras tendrán su descuento!" (Translation to English: Soon you will have the opportunity to order your personalized Ballerinas and only the first 10 purchases will have a discount!) (See, Exhibit C)

37.     A current catalog listing of the works and designs known by Plaintiff to be on

offer directly to the public by Defendant, totaling 26, is attached as Exhibit D.

38.     In effort to protect its interests and mitigate its damages, DRMArts has issued take-down demands to Youtube and Instagram under the Digital Millennium Copyright Act (DMCA), securing the temporary removal of infringing works from the internet.

39.     Despite Plaintiff's success in having works falling under the Agreement removed from the internet under the DMCA, Defendant has engaged in the reposting of the previously removed works as well as new works.

40.     In addition, Defendant has made unauthorized use of the wordmark, HELIANA LUSSIET, through her YouTube channel. For example, in the video "5 Errores de un Emigrante", posted without permission by Defendant, the wordmark appeared prominently at the conclusion of the video. (See, Exhibit E)

## COUNT I
## COPYRIGHT INFRINGEMENT – 17 U.S.C. § 501

41.     Plaintiff incorporates by reference the facts in paragraph 1- 40 above.

42.     By operation of the Master License Agreement, DRMArts holds the exclusive license to exploit numerous original, artistic works on canvas and in digital media created by Defendant that DRMArts registered with the U.S. Copyright Office on Defendant's behalf prior to Defendant's breach. (See, Exhibit A)

43.     While Defendant retains ownership of the copyrights to the works at issue, by executing the Master License Agreement, she conveyed to DRMArts, as exclusive licensee, worldwide rights to reproduce the works, create derivative works therefrom, distribute copies of the works, import or export the works, display the works, sell copies thereof, license and sublicense the works to third parties—all to the exclusion of all others, including Defendant herself.

44.     Defendant has been and is now infringing Plaintiff's rights, as exclusive licensee, by copying the works on digital mediums, publicly displaying the works, making copies of the works and making derivative works, selling and offering to sell such copies and derivative works.

45.     In so doing, Defendant is liquidating or otherwise dispossessing herself of new artwork covered by the Agreement, and to which Plaintiff has exclusive rights, before Defendant has an opportunity to digitize and properly register the work for further exploitation.

46.     Defendant's conduct constitutes the violation of the U.S. Copyright Act, 17 U.S.C. § 501, and the protections afforded to holders of valid copyright interests in protected works, such as Plaintiff, thus entitling Plaintiff to pursue this claim in protection of its interests.

47.     As a result of Defendant's infringements, Plaintiff has suffered damages and is entitled to judgment in an amount adequate to compensate for Defendant's infringement, as well as injunctive relief as authorized under the U.S. Copyright Act, 17 U.S.C. § 502, as reasonable and necessary to prevent Defendant's continued infringement.

## COUNT II
## TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114 & COMMON LAW

48.     Plaintiff incorporates by reference the facts in paragraph 1- 47 above.

49.     As alleged herein, pursuant to the Agreement, Defendant assigned exclusive rights to DRMArts to the wordmark HELIANA LUSSIET, Serial No. 86826243, which was published for opposition on The Official Gazette on August 16, 2016 and for which no opposition or request for extension of time has been received to date.

50.     In addition to the registration of the HELIANA LUSSIET mark, DRMArts has made extensive use of the mark in the course of its performance under the Agreement in

marketing and advertising the works covered by the Agreement and, therefore, has established common law rights to the mark throughout the United States and beyond its geographic borders.

51.     Since her breach of the Agreement, Defendant has engaged in the sale and advertising of works covered by the Agreement under the name Heliana Fortes by means including the newly created website, *www.helianafortes.com*, Instagram, Twitter, SnapChat, Facebook and YouTube. Defendant has displayed and/or made use of Plaintiff's HELIANA LUSSIET mark in those marketing and advertising activities without consultation with Plaintiff and in manners not authorized by Plaintiff.

52.     Defendant's infringing use of the mark has been undertaken in a willful and deliberate effort to cause confusion as to the origin of the goods and to compete with Plaintiff's efforts to exploit her works under the Agreement and drive prospective consumers to her website for purchases, thus causing DRMArts to lose sales, the volume and quantity of which cannot be calculated by DRMArts at this time.

53.     As a direct and proximate result of Defendant's unauthorized and infringing use of the mark, HELIANA LUSSIET, and the resulting actual confusion among consumers in the market, Plaintiff has suffered monetary damages and is entitled to judgment in an amount adequate to compensate for Defendant's infringement, and Plaintiff will continue to suffer damages and irreparable harm in the future unless Defendant's infringing activities are enjoined by this Court, as authorized by the Lanham Act, 15 U.S.C. §1116.

54.     Thus, given the inadequacy of remedies available to Plaintiff at law, a permanent injunction is appropriate and should be issued, enjoining Defendant and her agents, servants, employees, representatives, affiliates, and all others acting on in active concert therewith from

publishing, publicly displaying, selling and offering to sell works using the HELIANA LUSSIET

trademark without the express written consent of DRMArts.

**COUNT III**
**BREACH OF CONTRACT**

55.     Plaintiff incorporates by reference the facts in paragraph 1- 54 above.

56.     As alleged above, on or about October 1, 2015, DRMArts and Defendant entered

into a valid, binding contract making DRMArts the exclusive licensee of certain existing and

future fine artworks and accessory designs in exchange for consideration and benefits to

Defendant, including payment of a regular minimum licensing fee, reimbursement for the rental

of an artist's studio, art supplies, and an additional 50% profit participation for any licensing

revenue obtained by Plaintiff.

57.     The contract's essential terms are sufficiently definite as to set forth each party's

obligations and liabilities and, thus, is fully enforceable.

58.     Defendant willfully breached the essential terms of the Agreement and the duties

she assumed thereunder by refusing to comply with the clear terms thereof and by her

unequivocal refusal to perform her duties under the Agreement, to the detriment of Plaintiff's

interests and in frustration of Plaintiff's expectations.

59.     Plaintiff has performed all conditions precedent to its entitlement to full

performance from Defendant, going so far as to adjust the deliverables expectation for a certain

specified period while remitting the monthly minimum licensing fee.  Such actions evidence

Plaintiff's good faith and in no way may be construed as novation or accord and satisfaction.

60.     As a result of Defendant's breach, Plaintiff has suffered injury, and Plaintiff will

continue to suffer injury in the future unless Defendant is ordered to specifically perform under

the agreement by providing the original fine artworks and accessory designs she has created and unreasonably withheld from Plaintiff.

61.     Plaintiff has no adequate remedy at law, as Plaintiff's actual damages cannot be measured by any certain pecuniary standard and would not adequately compensate Plaintiff for its injuries even if precise calculation were possible.

62.     It is quite possible and feasible for Defendant to resume full and proper performance under the contract immediately, as the terms of the Agreement are precise and reflect all requisite definiteness for the Court to issue an appropriate injunction that comports with the terms thereof.

63.     Therefore, with regard to Plaintiff's breach of contract claim, DRMArts is entitled to the equitable remedy of specific performance as a substitute for monetary damages.

## COUNT IV
## UNJUST ENRICHMENT AND *QUANTUM MERUIT*

64.     Plaintiff incorporates by reference the facts in paragraph 1 – 63 above.

65.     Should it be determined that the Agreement between DRMArts and Defendant is somehow invalid or defective in some way, such that it is deemed unenforceable, as an alternative to a breach of contract claim, Plaintiff is entitled to the equitable remedy of unjust enrichment and/or *quantum meruit*.

66.     In her dealings with DRMArts since October of 2015, Defendant has received considerable pecuniary benefits from Plaintiff, including an advance on license fees, as well as reimbursement for art studio rental fees and art supplies, which it would be unjust for Defendant to retain and for which she should make restitution, given her conduct as alleged herein.

67.     Therefore, under the equitable theories of unjust enrichment and *quantum meruit*, Plaintiff is entitled to an award of damages that fairly compensate or reimburse it for the benefits

conferred upon and willfully received by Defendant.

## COUNT V
## BUSINESS DEFAMATION

68.    Plaintiff incorporates by reference the facts in paragraph 1 – 67 above.

69.    Sometime after Defendant's failure to perform under the contract began, Defendant posted one or more videos on Youtube.com in which she made false statements of fact regarding her relationship with DRMArts and the nature and terms of the Agreement.

70.    The false statements of fact that Defendant broadcast over social media to a worldwide audience, including individuals familiar with DRMArts and its principals, were intended to and did harm DRMArts' reputation as a burgeoning company in the arts world and, upon information and belief, will also make it more difficult for DRMArts to attract future clients in the arts community.

71.    In addition to false statements of fact communicated over social media, Defendant has communicated disparaging statements to specific third parties, including personnel at Instagram and Facebook, in which she further disparages DRMArts and its agents.

72.    As a result of Defendant's willful transmission and broadcast of disparaging comments to specific third parties and over social media, Plaintiff's reputation has been harmed and Plaintiff is entitled to an award of non-economic damages under Texas law in an amount to be assigned by the jury at trial as fair and appropriate compensation for loss of reputation.

## COUNT VI
## PERMANENT INJUNCTION

73.    Plaintiff incorporates by reference the facts in paragraph 1 - 72 above.

74.    The damages and injuries suffered by DRMArts as a direct and proximate result of Defendant's violations of 17 U.S.C. § 501 *et seq.* (copyright infringement) and 15 U.S.C. §

1114, 1125 (trademark infringement) and the common law constitute damages and injuries which are ongoing and for which there is not an adequate remedy at law.

75.     The service to be rendered by Defendant under the Agreement, the creation of artistic works, is of a personal nature only capable of performance by Defendant and, therefore, such performance cannot be obtained from another source, nor can the products be acquired from another source, as no fungible goods or products exist from any alternative source.

76.     As demonstrated by Defendant's continual reposting and display of works covered by the Agreement on social media such as Instagram after such internet sites have removed the content, Defendant will continue to exercise rights to exploit the works that she conveyed exclusively to DRMArts by way of the Agreement, and her ongoing wrongful actions constitute a present and imminent harm to Plaintiff by undermining and impeding DRMArts' effort to exploit the works and recover the expenses and significant investment that it has made in the works and, more broadly, Defendant's career as a productive, income-generating artist.

77.     As demonstrated by Defendant's continued use of the HELIANA LUSSIET mark in the promotion, marketing and advertising of works covered by the Agreement, Defendant will continue to cause confusion among the consuming public and market for her artwork, and her actions therefore constitute an ongoing and imminent harm to Plaintiff that will undermine the value of the mark by loss of goodwill and the association with the mark that DRMArts has created through its marketing efforts and advertising.

78.     Defendant has expressed a clear intention to continue exercising absolute dominion and control over the copyright interests and trademark rights she previously conveyed exclusively to DRMArts, and her actions constitute wrongful acts willfully undertaken in her unlawful refusal to perform her obligations under the Agreement.

79.     Because the works of art Defendant agreed to produce under the Agreement are unique and cannot be replaced in the open market or obtained from an alternate source, Plaintiff's loss of access to the artwork constitutes an irreparable harm for which there is no adequate remedy at law.

80.     By reason of the foregoing, and pursuant to 17 U.S.C. § 502. and 15 U.S.C. § 1116 and the law of the State of Texas governing the issuance of permanent injunctions, DRMArts is entitled to a permanent injunction (a) ordering Defendant to specifically perform the duties required of her under the contract, and prohibiting Defendant from  (b) exercising any rights to the works at issue in the Agreement that are inconsistent with Plaintiff's rights as exclusive licensee, and (c) continuing to use in an any way the mark HELIANA LUSSIET or any other names or designations that are confusingly similar to that word mark.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues so triable herein.

WHEREFORE, Plaintiff DRMArts, LLC, respectfully requests that the Court:

1.     Enter judgment in favor of Plaintiff, declaring Defendant to be liable for having infringed Plaintiff's copyright interests as exclusive licensee to the works at issue;

2.     Enter judgment in favor of Plaintiff, declaring Defendant to be liable for having infringed Plaintiff's interests in the wordmark HELIANA LUSSIET;

3.     Enter judgment in favor of Plaintiff, declaring Defendant to be liable for having breached the Master License Agreement's essential terms, and issue an injunction ordering the Defendant specifically perform the duties Defendant assumed under the terms of the contract as a substitute for money damages;

4.      In the alternative to breach of contract, should the Court determine for any reason that the Master License Agreement is unenforceable, enter judgment in favor of Plaintiff under the theories of unjust enrichment and/or quantum meruit, awarding appropriate damages to reimburse Plaintiff for the benefits conferred upon Defendant;

5.      Enter judgment in favor of Plaintiff, declaring Defendant liable for business defamation, awarding damages to compensate Plaintiff for its loss of reputation; and

6.      That the Court issue a permanent injunction commanding Defendant to:

(a)      specifically perform the duties she assumed under the Agreement, including but not limited to promptly notifying DRMArts of the completion of each artwork Defendant may create, promptly providing a digital copy of said artworks to DRMArts together with title and date of creation, and promptly delivering each completed artwork to DRMArts, as set forth in the Agreement;

(b)      discontinue all infringing activity, including the removal of any and all publications and public displays that include copyrighted material exclusively licensed to Plaintiff, including, but not limited to, removal of works from all social media accounts and websites such as *www.helianafortes.com*, Instagram, Facebook, YouTube, Snapchat, and Twitter;

(c)      enjoining Defendant and her agents, servants, affiliates, employees, and all others acting in active concert therewith from infringing any copyrights exclusively licensed to Plaintiff, including but not limited to the unauthorized sale, public display, licensing, copying of fine art works and accessory designs created by Defendant since execution of the Agreement;

(d)      enjoining Defendant and her agents, servants, affiliates, employees, and all

others acting in active concert therewith from infringing Plaintiff's interests in the

wordmark, HELIANA LUSSIET, including but not limited to the unauthorized

use of the mark for the marketing and advertising of Defendant's works, designs

or any other products;

7.      Any and all other relief, at law or equity, to which Plaintiff may show itself to be

entitled and this Court thinks is just and proper.


DATED October 27, 2016.                    Respectfully submitted,

                                           By: */s/ Hao Ni*
                                           Hao Ni
                                           Texas Bar No. 24047205
                                           hni@nilawfirm.com

                                           **NI, WANG & MASSAND, PLLC**
                                           8140 Walnut Hill Ln., Ste. 500
                                           Dallas, TX 75231
                                           Tel: (972) 331-4600
                                           Fax: (972) 314-0900

                                           Eric L. Register (*pro hac vice* to be filed)
                                           GA Bar No. 599199
                                           LA Bar No. 23449
                                           NC Bar No. 26103
                                           Register | Lett LLP
                                           1800 Peachtree Street, NW, Suite 809
                                           Atlanta, GA  30309
                                           p:  404-352-9019 Ext. 3
                                           f:   404-352-9018
                                           eregister@registerlett.com

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **DRMARTS LLC**